UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – –x

UNITED STATES OF AMERICA, and
STATE OF NEW YORK,
*ex rel.* DONNA GERACI and LINDA GIBB,

              Plaintiffs,

   - against -

ZWANGER & PESIRI RADIOLOGY
GROUP, LLP, ZWANGER RADIOLOGY,
P.C., and DR. STEVEN MENDELSOHN,

              Defendants.

– – – – – – – – – – – – – – – – – – – – –x

Civil Action No.
13-CV-5002

(Seybert, J.)
(Lindsay, M.J.)

## SETTLEMENT AGREEMENT AND ORDER

This Settlement Agreement (the "Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, the "United States"), the State of New York (the "State"), acting through the New York State Attorney General's Medicaid Fraud Control Unit ("MFCU"), Zwanger & Pesiri Radiology Group, LLP, Zwanger Radiology, P.C. (collectively "Zwanger"), Dr. Steven Mendelsohn ("Dr. Mendelsohn", together, with Zwanger, the "Defendants") and Donna Geraci and Linda Gibb ("Relators") (hereafter, all of the above are collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.     Zwanger is headquartered in Lindenhurst, New York and provides a variety of diagnostic testing, radiology and imaging services to referred patients.  Dr. Mendelsohn is the

Chief Executive Officer, Medical Director, and part-owner of Zwanger.

B.    At all relevant times, Defendants submitted, or caused to be submitted, claims to, and received payments from, the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"), and New York's Medical Assistance Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid") for a wide range of radiology tests and procedures provided to patients in New York.

C.    On or about September 6, 2013, Relators filed an action in the United States District Court for the Eastern District of New York captioned *U.S. et al. ex rel. Geraci & Gibb vs. Zwanger & Pesiri Radiology Group, LLP et al.,* 13-CV-5002 (the "Civil Action"), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) and the New York False Claims Act, N.Y. State Fin. Law § 190(2).

D.    The United States and State of New York contend that they have certain civil claims against Defendants arising from the following conduct, which occurred during the period of January 1, 2008 through February 28, 2014, as described in Paragraph D.a. below and January 1, 2003 through October 26, 2015, as described in Paragraph D.b. below (the Medicare claims are referred to as the "Medicare Covered Conduct" and the Medicaid claims are referred to as the "Medicaid Covered Conduct"; the Medicare Covered Conduct and the Medicaid Covered Conduct are collectively referred to as "Covered Conduct"):

   a) Defendants submitted false claims to Medicare and Medicaid for: (1) the automatic performance of both a dual energy x-ray absorptiometry ("DXA") bone scan and a vertebral fracture assessment even though both procedures were not ordered by a treating physician; and (2) the automatic performance of both a

2

> pelvic and transvaginal ultrasound in female patients even
> though both procedures were not ordered by a treating
> physician; and
>
> b) Defendants submitted false claims to Medicare and Medicaid
> for procedures performed or supervised by physicians or at a
> practice location that was/were not enrolled in Medicare and/or
> Medicaid by: (1) submitting claims as if Dr. Mendelsohn
> performed or supervised certain procedures, when in actuality
> he did not; and (2) impermissibly using a Q6 modifier to bill for
> services performed by such physicians.

E. This Agreement is made in compromise of disputed claims. This Agreement is neither an admission of liability by Defendants nor a concession by the United States and the State that their claims are not well founded. Neither this Agreement, its execution, nor the performance of any obligation under it, including any payment, nor the fact of settlement, is intended to be, or shall be understood as, an admission of liability or wrongdoing, or other expressions reflecting upon the merits of the dispute by Defendants.

F. Relators claim entitlement under 31 U.S.C. § 3730(d) and N.Y. State Fin. Law § 190(6) to a share of the proceeds of this Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

G. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Defendants shall pay to the United States and the State of New York a total settlement amount of Eight Million One Hundred Fifty Three Thousand Seven Hundred Twenty

3

Seven Dollars and Zero Cents ($8,153,727.00), plus interest at a rate of 2.25% per annum beginning July 1, 2016 and continuing until the day of payment (the "Total Settlement Amount"), to be paid as follows:

    a.    Defendants shall pay to the United States Six Million Nine Hundred Twenty One Thousand, Four Hundred Ninety Dollars and Eighty Cents ($6,921,490.80), which shall include payment for the Medicare Covered Conduct and payment of the United States share of the recovery for the Medicaid Covered Conduct ("Federal Settlement Amount");

    b.    Defendants shall pay to the State of New York One Million Two Hundred Thirty Two Thousand Two Hundred Thirty Six Dollars and Twenty Cents ($1,232,236.20) ("State Medicaid Settlement Amount").

    c.    On the Effective Date of this Agreement, as defined in paragraph 32, *infra*, this Settlement Amount shall constitute a debt due and owing to the United States and the State of New York.

2.    Defendants shall discharge their debt to the United States for the Federal Settlement Amount under the following terms and conditions:

    a.    by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Eastern District of New York on its letterhead. Defendants agree to make this electronic funds transfer no later than fifteen (15) days after the later of the Effective Date of this Agreement or Defendants' receipt of the aforementioned written electronic funds transfer instructions.

    b.    In the event that Defendants fail to pay the amount provided in Paragraph 1 within the time such payment is due, Defendants shall be in default of their

payment obligations ("Default"). The United States will provide written notice of the Default to Defendants and they shall have the opportunity to cure such Default within five (5) business days from the date of receipt of the notice. Notice of Default will be delivered to Defendants, or to such other representative as they shall designate in advance in writing. If Defendants fail to cure such Default within five (5) business days of receiving the Notice of Default ("Uncured Default"), interest on the Federal Settlement Amount shall accrue at the rate of 12% per annum compounded daily from the date of Default on the unpaid amount (principal and interest balance). Upon an Uncured Default, the United States, at its sole option, may: (i) offset the unpaid balance from any amounts due and owing to Defendants by any department, agency, or agent of the United States at the time of Default; (ii) collect the entire unpaid balance of the Settlement Amount, plus interest, including 12% interest from the date of Default, and all other amounts due upon the event of Default as specified in this paragraph; (iii) file a civil action for the Covered Conduct; (iv) exercise any other rights granted by law or in equity, including referral of this matter for private collection; or (v) exclude Defendants from participating in all Federal health care programs pursuant to Paragraph 5, below, until Defendants pay the Federal Settlement Amount, applicable interest, and reasonable costs as set forth in this Paragraph. In the event a complaint is filed pursuant to subsection (iii) of this paragraph, Defendants agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, res judicata, or similar theories to the allegations in the complaint, except to the extent such defenses were available to Defendants on the Effective Date of this Agreement. Defendants agree not to contest any consent judgment, offset, recoupment, and/or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except that Defendants shall not be precluded from asserting the affirmative defense of payment or miscomputation. Defendants shall pay to the United States all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses.

3.     Defendants shall discharge their debt to the State for the State Medicaid

Settlement Amount under the following terms and conditions:

a.     by electronic funds transfer pursuant to written instructions to be provided by MFCU. Defendants agree to make this electronic funds transfer no later than fifteen (15) days after the later of the Effective Date of this Agreement

5

or Defendants' receipt of the aforementioned written electronic funds transfer instructions.

b. In the event of a Default, the State will provide written notice of the Default to Defendants and Defendants shall have the opportunity to cure such Default within five (5) business days from the date of receipt of the notice. Notice of Default will be delivered to Defendants, or to such other representative as he shall designate in advance in writing. In the event of an Uncured Default, the remaining unpaid balance of the State Medicaid Settlement Amount (subject to Paragraphs 1-2), shall become immediately due and payable, and interest shall accrue at the rate of 12% per annum compounded daily from the date of Default on the remaining unpaid total (principal and interest balance). Upon an Uncured Default, the State of New York, at its sole option, may: (i) offset the remaining unpaid balance from any amounts due and owing to Defendants by any department, agency, or agent of the State of New York at the time of Default; (ii) collect the entire unpaid balance of the State Medicaid Settlement Amount (subject to Paragraphs 1-2), plus interest, including 12% interest from the date of Default, and all other amounts due upon the event of Default as specified in this paragraph; (iii) file a civil action for the Covered Conduct; (iv) exercise any other rights granted by law or in equity, including referral of this matter for private collection; or (v) exclude Defendants from participating in all State health care programs until Defendants pay the State Medicaid Settlement Amount, applicable interest. In the event a complaint is filed pursuant to subsection (iii) of this paragraph, Defendants agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, res judicata, or similar theories to the allegations in the complaint, except to the extent such defenses were available to Defendants on the Effective Date of this Agreement. Defendants agree not to contest any consent judgment, offset, recoupment, and/or collection action undertaken by the State of New York pursuant to this paragraph, either administratively or in any state or federal court, except that Defendants shall not be precluded from asserting the affirmative defense of payment or miscomputation. Defendants shall pay to the State of New York all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses.

4. In consideration of the obligations of Defendants in this Agreement and the Corporate Integrity Agreement ("CIA") entered into between OIG-HHS and Defendants,

6

conditioned upon Defendants' full payment of the Total Settlement Amount, the OIG-HHS agrees

to release and refrain from instituting, directing, or maintaining any administrative action seeking

exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42

U.S.C. § 1320a-7b(f)) against Defendants under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties

Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other

prohibited activities) for the Covered Conduct, except as reserved in Paragraph 7 (concerning

excluded claims), below, and as reserved in this Paragraph. The OIG-HHS expressly reserves all

rights to comply with any statutory obligations to exclude Defendants from Medicare, Medicaid,

and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based

upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking

action against entities or persons, or for conduct and practices, for which claims have been

reserved in Paragraph 7, below.

5.      Notwithstanding the foregoing, in the event of Uncured Default as defined in

Paragraph 2.b, above, OIG-HHS may exclude Defendants from participating in all Federal health

care programs until Defendants pay the remaining Federal Settlement Amount, applicable interest,

and reasonable costs, as set forth in Paragraph 2.b, above. OIG-HHS will provide written notice

of any such exclusion to Defendants. Defendants waive any further notice of the exclusion under

42 U.S.C. § 1320a-7(b)(7), and agree not to contest such exclusion either administratively or in

any state or federal court. Reinstatement to program participation is not automatic. If at the end

of the period of exclusion Defendants wish to apply for reinstatement, Defendants must submit a

written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§

1001.3001-.3005. Defendants will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

6.      Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, and conditioned upon Defendants full payment of the Federal Settlement Amount, the United States releases Defendants together with their current or former owners, officers, directors, and affiliates; and the successors, transferees, heirs, and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties for which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I. 0.45(d), or the common law theories of payment by mistake, unjust enrichment, and fraud.

7.      Notwithstanding the releases given in Paragraphs 4 and 6 of this Agreement, or any other term of this Agreement, the following claims of the United States and/or Relators are specifically reserved and are not released:

    a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.      Any criminal liability;

    c.      Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

    d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.      Any liability based upon obligations created by this Agreement;

8

      f.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

      g.      Any liability for failure to deliver goods or services due;

      h.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

      i.      Any claims by Relators for reasonable expenses, attorneys' fees and costs in the Civil Action.

8.      Subject to the exceptions in Paragraph 9 (concerning excluded claims) below, and conditioned upon Defendants' full payment of the State Medicaid Settlement Amount, the State agrees to release Defendants from any civil monetary claims arising from the Medicaid Covered Conduct that the State has or may have against Defendants under the New York False Claims Act, N.Y. State Fin. Law §§ 189 et seq., Executive Law § 63(12), Executive Law § 63-c, Social Services Law § 145-b, or any other state law, or common law or equity, including equitable theories of payment by mistake, unjust enrichment, breach of contract, and fraud.

9.      Notwithstanding any term of this Agreement, including the releases provided in Paragraph 8 above, the following claims of the State or the Relators are specifically reserved and are not released:

      a.      Any civil, criminal, or administrative liability arising under New York Tax Law;

      b.      Any civil liability under any state statute, regulation, or rule not covered by this Agreement;

      c.      Any criminal liability;

    d.    Any administrative liability, including mandatory or permissive exclusion from the Medicaid program;

    e.    Any liability to the State (or its agencies) for any conduct other than the Medicaid Covered Conduct;

    f.    Any liability which may be asserted, directly or indirectly, by private payors or insurers, including those that are paid by the State of New York Medicaid Program on a fully capitated basis;

    g.    Any liability based on obligations created by this Agreement;

    h.    Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    i.    Any liability for failure to provide goods or services due;

    j.    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

    h.    Any claims by Relators for reasonable expenses, attorneys' fees and costs in the Civil Action.

10.    Conditioned upon Defendants' payment of the Total Settlement Amount in accordance with Paragraph 1, Relators agree to dismiss with prejudice any currently pending claims against Defendants and to release Defendants, together with their current or former owners, officers, directors, and affiliates; and the successors, transferees, heirs, and assigns of any of them, from any and all claims that Relators asserted, could have asserted, or may assert in the future against Defendants, their current or former owners, officers, directors, and affiliates, and the successors, transferees, heirs, and assigns of any of them, relating to the matters set forth in Relator's complaint filed in this Civil Action.

11.    Relators, along with their successors, transferees, heirs, and assigns, shall not

object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and N.Y. State Fin. Law § 190(5)(b)(ii). The United States and Relators have agreed on a Relators' share of the Federal Settlement Amount of 18%, or One Million, Two Hundred Forty Five Thousand, Eight Hundred Sixty Eight Dollars and Forty Cents ($1,245,868.40); the State and Relators have agreed on a Relators' share of the State Medicaid Settlement Amount of 18%, or Two Hundred Twenty One Thousand, Eight Hundred Two Dollars and Fifty Two Cents ($221,802.52). Payment made to Relators pursuant to 31 U.S.C. § 3730(d)(l) and N.Y. State Fin. Law § 190(6)(a) are contingent upon the United States and the State receiving their respective payments of the Total Settlement Amount set forth in paragraph 1 above. It is expressly understood and agreed that the United States and the State in no way promise, guarantee, nor are liable to Relators for the collection or payment of any funds pursuant to this Agreement or the payment of Relators' share except as provided herein for funds actually collected and received by the United States and the State. Contingent upon actual receipt of payment, the United States and the State shall promptly inform Relators' counsel of such payment's receipt, and pay to Relators any agreed-upon Relators' share as soon as feasible after receipt, in accordance with payment instructions to be provided in writing by Relators' counsel.

12. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the

Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States or the State concerning the characterization of the Total Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code or State revenue codes.

13.    Defendants fully and finally release the United States, the State and their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, the State, or their agencies, officers, agents, employees, and servants, related to all matters set forth in the *qui tam* complaint filed in the Civil Action and the investigation and prosecution thereof by the United States and the State.

14.    Defendants fully and finally release Relators, and Relators' successors, transferees, heirs, and assigns, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against Relators, and Relators' successors, transferees, heirs, and assigns, related to the matters set forth in the *qui tam* complaint filed in this Civil Action and the investigation and prosecution thereof.

15.    The Total Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payor, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor or any state payor any

previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

16.    Defendants agree to the following:

   a.    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants or their present or former officers, directors, employees, shareholders, and agents in connection with:

      i.    the matters covered by this Agreement;

      ii.    the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

      iii.    Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

      iv.    the negotiation and performance of this Agreement;

      v.    the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants make to Relators, including costs and attorneys' fees; and

      vi.    the negotiation of, and obligations undertaken pursuant to the CIA to: (1) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and (2) prepare and submit reports to the OIG-HHS,

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program ("FEHBP") (hereinafter referred to as "Unallowable Costs"). However, nothing in paragraph 16.a.(vi) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Defendants.

13

b.   Future Treatment of Unallowable Costs: If applicable, Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.   Treatment of Unallowable Costs Previously Submitted for Payment: If applicable, Defendants further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of its subsidiaries or affiliates and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

d.   Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendants or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

e.   Nothing in this Agreement shall constitute a waiver of the rights of the United States or State to audit, examine, or re-examine Defendants books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17.   This Agreement is intended to be for the benefit of the Parties only.   The Parties

do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 (waiver for beneficiaries paragraph), below.

18.     Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

19.     Defendants warrant that they have reviewed their financial situation and that they currently are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment of the Total Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

20.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, any Defendant commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or

relief of debtors (a) seeking to have any order for relief of any Defendant's debts, or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of any Defendant's assets, Defendants agree as follows:

a. Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Defendants were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payments made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Defendants.

b. If Defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the release provided in Paragraph 5 above. Defendants agree that: (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this paragraph, and Defendants shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, res judicata, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the United States within 60 calendar days of written notification to Defendants that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on the Effective Date of this Agreement; and (iii) the United States has a valid claim against Defendants in the amount of $6,921,429.80, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this paragraph, as well as in any other case, action, or proceeding.

        c.     Defendants acknowledge that their agreements in this paragraph are provided in exchange for valuable consideration provided in this Agreement.

21.     Contemporaneously with the filing of this Settlement Agreement, the United States and State shall file in this Civil Action a Notice of Partial Intervention and a Proposed Unsealing Order. Upon receipt of the Payments described in Paragraph 1, above, the United States, State and Relators shall promptly sign and file a Joint Stipulation of Dismissal of this Civil Action pursuant to Rule 41(a)(1). The dismissal shall be with prejudice as to Relators. With respect to the United States and State, the dismissal shall be with prejudice as to the allegations contained in the Covered Conduct, and without prejudice as to any other allegations contained in Relators' complaint.

22.     Except as expressly provided to the contrary in this Agreement with regard to Defendants' liability to counsel for Relators for available attorney's fees and costs, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

23.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

24.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of New York. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

25.   The terms of this Agreement shall remain effective notwithstanding any appeal, collateral attack, or any challenge to any criminal charge, conviction, plea, or sentencing of any person, including but not limited to, the reversal, modification, or dismissal of all or any portion of such charge, conviction, plea, or sentence, or the charging, conviction, plea, or sentencing of any other person.

26.   This Agreement constitutes the complete agreement between the Parties.   This Agreement may not be amended except by written consent of the Parties.

27.   The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

28.   This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

29.   This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

30.   This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

31.   All parties consent to the United States' and State's disclosure of this Agreement, and information about this Agreement, to the public.

32.   This Agreement is effective on the date of signature of the last signatory to the Agreement (the "Effective Date of this Agreement").   Signatures delivered by facsimile transmission or as .pdf attachments shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

ROBERT L. CAPERS
United States Attorney
Eastern District of New York

Dated: October 31, 2016          BY: _____

ROBERT W. SCHUMACHER
Assistant United States Attorney
Eastern District of New York

Dated: October ___, 2016          BY: _____

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and
Human Services

19

## THE UNITED STATES OF AMERICA

ROBERT L. CAPERS
United States Attorney
Eastern District of New York

Dated: October __, 2016          BY: _____

ROBERT W. SCHUMACHER
Assistant United States Attorney
Eastern District of New York

Dated: October 26 2016          BY: _____

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and
Human Services

19

## THE STATE OF NEW YORK

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

Dated: October 31, 2016      BY: _Carolyn T. Ellis_

CAROLYN T. ELLIS
Chief, Civil Enforcement Division
Medicaid Fraud Control Unit
Office of the Attorney General
State of New York

20

## DEFENDANTS

*By signing below, I confirm that I have read and understood the above.*

AGREED AND CONSENTED TO:

*Steven Mendelsohn MD*

Dr. Steven Mendelsohn, Individually and on
behalf of Zwanger & Pesiri Radiology
Group, LLP, Zwanger Radiology, P.C.

On the _20_ day of _October_ in the year _2016_, before me, the undersigned,
personally appeared _Steven Mendelsohn_ personally known to me or proved to me on the basis
of satisfactory evidence to be the individual whose name is subscribed to the within instrument.

*Patricia E. Baker*

NOTARY PUBLIC

PATRICIA E. BAKER
Notary Public, State of New York
No. 4827520
Qualified in Nassau County
Commission Expires April 30, 20 18

Dated: October _31_, 2016

Approved as to Form:
RIVKIN RADLER LLP
Attorney for Defendants

By: *Geoffrey Kaiser*

Geoffrey R. Kaiser
RIVKIN RADLER, LLP
926 RXR Plaza
Uniondale, New York 11556-0926
516-357-3161

21

## RELATORS

*By signing below, I confirm that I have read and understood the above.*

AGREED AND CONSENTED TO:

_____
Linda Gibb

On the 25th day of October in the year 2016, before me, the undersigned, personally appeared Linda M Gibb, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument.

JAMIE MCCUTCHEN
Notary Public, State of New York
No. 01MC6325623
Qualified in Suffolk County
Commission Expires June 1, 20__

_____
NOTARY PUBLIC

AGREED AND CONSENTED TO:

_____
Donna Geraci

On the 21st day of October in the year 2016, before me, the undersigned, personally appeared Donna Geraci, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument.

PATRICK DWYER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DR6306571
Qualified in Suffolk County
My Commission Expires June 23, 2018

_____
NOTARY PUBLIC

Dated: October __, 2016

Approved as to Form:
    CONSTANTINE CANNON LLP
    Attorneys for Relators

By:    _____
    Timothy McCormack, Esq.
    CONSTANTINE CANNON LLP
    1001 Pennsylvania Ave., NW
    Suite 1300N
    Washington, DC 20004
    202-204-4524

22

**SO ORDERED.**

/s/ JOANNA SEYBERT        November 16, 2016
_____
HONORABLE JOANNA SEYBERT
SENIOR UNITED STATES DISTRICT JUDGE